IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-03324-WJM-MJW

SHAWN MANDEL WINKLER,

Plaintiff(s),

v.

THOMAS MERTENS, Correctional Officer,
JOHN DOE 2, Unknown Officer of Sterling Correctional facility on Hospital Duty,
WESLY WILSON, Case Manager Supervisor,
ROBERT DICK, Case Manager,
SGT. BRADSHAW, Housing Officer,
CORRECTIONAL OFFICER LOIZER,
all individually and in their official capacities, and
KARBON ARMS, Manufacturer of the KARBON Band-it,

Defendant(s).

---

**RECOMMENDATION ON
(1) PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TRO
(Docket No. 100),
(2) PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TRO
(Docket No. 101), and
(3) DEFENDANT KARBON ARMS'S MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(6) (Docket No. 62)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case was referred to this court pursuant to an Order Referring Case issued

by now Chief Judge Marcia S. Krieger on March 26, 2012.  (Docket No. 35).  Following

Judge Krieger's recusal (Docket No. 63), the case was subsequently reassigned to

Judge William J. Martinez.  (Docket No. 64).

**PLAINTIFF'S ALLEGATIONS**

When the pro se plaintiff commenced this action, he was in the custody of the

2

Colorado Department of Corrections ("CDOC").  He has since been released.  He

alleges the following in his Amended Prisoner Complaint (Docket No. 19).

**Claim One.  Use of Excessive Force and Cruel and Unusual Punishment.**

On August 12, 2011, plaintiff was transported to the Sterling Regional Medical Center,

unconscious from an accidental poisoning by an unspecified drug, which was the third

time such an incident happened to him while at Sterling Correctional Facility.  All of

these incidents coincided with his filing court actions.  On this occasion, he went into "V-

Tach and flat lined."  (Docket No. 19 at 4).  He was resuscitated twice with a

defibrillator.  He regained semi-consciousness on August 14, 2011, to a sharp pain in

his right leg, which was convulsing uncontrollably.  His first conscious memory was John

Doe 1 and/or John Doe 2 and/or the court's information officer (Gilmore and/or Bennett)

saying, "He's alive.  Look at that leg jump."  (Docket No. 19 at 4-5).  Plaintiff had slowly

become aware of an unidentifiable noise which ceased, as did his leg convulsion, while

one of these individuals chuckled.  Plaintiff was unable to identify the source because

he could not focus fully and could not turn because he was intubated.  Plaintiff said,

"Hey I can hear you."  (Docket No. 19 at 5).  All banter ended, and one of these

individuals said, "Shit!  He's awake."  (Docket No. 19 at 5).  Plaintiff was able to shower

two days later, at which time he discovered that the security device (Band-It Taser) had

severely burned his right calf.  It is his understanding and belief from further

investigation that it is a common practice of correctional officers on hospital watch to

"Brand their Cattle."  (Docket No. 19 at 5).

**Claim Two.  Failure to Act to Remedy a Wrong and Intimidation.**  Plaintiff's

requests to initiate a formal grievance were denied until he returned to Sterling

Correctional Facility.   A Step 1 Grievance and formal complaint of the incident was

finally issued by plaintiff's case manager, Robert Dick, on September 16, 2011.  On

September 21, 2011, Wesly Wilson summoned plaintiff to his office.  With plaintiff's

grievance in hand, he said to plaintiff, "This will not go anywhere because we will just

claim equipment malfunction." (Docket No. 19 at 5).  Plaintiff pointed out he had

learned that that safety device was to be changed every 24 hours.  The severity of the

burns indicated more than a single discharge or that several pieces of equipment had

malfunctioned.  Wilson then threatened plaintiff to "be careful before something more

serious might happen."  (Docket No. 19 at 5).

**Claim Three.  Harassment and Retailiatory Treatment.**  When plaintiff first

filed to be added to the Montez class action in 2002, a pattern of events demonstrating

intentional retaliation against him was set in motion, i.e., given crushed medication

causing "accidental poisoning."  On or about February 18, 2011, plaintiff wrote letters to

both Tom Clements and then warden Kevin Milyard about plaintiff's problems and court

actions, but he did not receive a response.  On September 29, 2011, Sgt. Bradshaw

and officer Loizer performed "Blue Tornado" in plaintiff's cell area during which plaintiff's

legal documents, notes, and evidence of this and other actions were taken.   Plaintiff's

case manager, Robert Dick, informed plaintiff the following day that he had ordered the

action and had generated documentation that would show that plaintiff was in violation

of facility rules, which would allow employees to take all legal papers.

**Claim Four.  Product Liability.**  Plaintiff asserts only the following with respect

4

to this claim:

> Court filings in May and August of 2011 concerning the Plaintiff's criminal issues and institutional problems precluded the events described herein. Immediately after both filings, suspicious, accidental poisonings both requiring hospitalization occurred. The added 'Branding' by taser is emphasis on what is my understanding and belief to be a common practice at SCF. Several stories of "Branding" have been heard since this incident, but the Plaintiff can only confirm that of Louis Madrid #90440. The Respondents have suggested in response to the grievances that the Hospital equipment is somehow responsible. Not being the only inmate having had the same and or similar incident while at the Sterling Regional Medical Center this is not an unknown fault of the equipment if it is in fact true. This being a possibility the manufactures [sic] and the Defendants are liable for continuing use of what is known to be faulty equipment.

(Docket No. 19 at 6-7).

Plaintiff seeks compensatory damages of no less than $783,000.00 for the pain and mental anguish he suffered due to the defendants' deliberate indifference and intentional misconduct, plus fees and costs.

## **PENDING MOTIONS**

Now before the court for a report and recommendation are the following three motions: (1) plaintiff's Motion for Preliminary Injunction and TRO, in which he seeks a court order directing "the unimpeded continued access to the courts" by being allowed to make additional photocopies; (2) plaintiff's Motion for Preliminary Injunction and TRO (Docket No. 101), in which he seeks a court order directing unimpeded access to inmates Louis Madrid and Edward Gomez for the purpose of obtaining their declarations; and (3) Defendant Karbon Arms's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 62). Responses were filed to each of these three motions. (Docket Nos. 94, 121, 122). The court has carefully considered these motions papers and has also considered applicable Federal Rules of Civil Procedure and case law. In

5

addition, the court has taken judicial notice of the court file.  The court now being fully

informed, makes the following findings, conclusions, and recommendations.

**Plaintiff's Motions for Injunctive Relief**

Before plaintiff was released from custody, he filed two motions for a preliminary

injunction and temporary restraining order.  (Docket Nos. 100 and 101).  Injunctive relief

is an extraordinary remedy that should be granted only when the moving party clearly

and unequivocally demonstrates its necessity.  See Schrier v. University of Colo., 427

F.3d 1253, 1258 (10th Cir. 2005).  In the Tenth Circuit, the party requesting injunctive

relief must establish that: (1) the party will suffer irreparable injury unless the injunction

issues; (2) the threatened injury outweighs whatever damage the proposed injunction

may cause the opposing party; (3) the injunction, if issued, would not be adverse to the

public interest; and (4) there is a substantial likelihood of success on the merits.  Id.

Furthermore, this court also "considers well-established law that prison management

functions should be left to the broad discretion of prison administrators to enable them

to manage prisons safely and effectively. . . .   Courts should grant injunctive relief

involving the management of prisons . . . only under exceptional and compelling

circumstances."  Walker v. Meyer, 2009 WL 1965493, *4 (D. Colo. July 8, 2009)

(citations omitted).  Such circumstances are not presented here.

It is recommended that the plaintiff's Motion for Preliminary Injunction and TRO

(Docket No. 100), in which the plaintiff seeks a court order directing "the unimpeded

continued access to the courts" by being allowed to make additional photocopies, be

denied as moot given the plaintiff's release from confinement.

It is further recommended that the plaintiff's Motion for Preliminary Injunction and

6

TRO (Docket No. 101), in which the plaintiff seeks a court order directing unimpeded

access to inmates Louis Madrid and Edward Gomez for the purpose of obtaining their

declarations, also be denied given plaintiff's release from custody.  Even when in

custody, as noted by counsel for the CDOC defendants in their Response (Docket No.

122), plaintiff was able to utilize the mail system to contact those inmates pursuant to

CDOC Administrative Regulation 300-38.  Furthermore, the court notes that the plaintiff

is seeking relief from non-parties.  See Winslow v. Leh, 577 F. Supp. 951, 952 (D. Colo.

1984) (court is unable to enjoin entities or persons who are not parties to the action and

over whom the court has no jurisdiction).

**Defendant Karbon Arms's Motion to Dismiss**

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the

claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A motion to

dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon

which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A complaint must be dismissed

pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to

relief that is plausible on its face.'"  Cutter v. RailAmerica, Inc., 2008 WL 163016, at *2

(D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127

S. Ct. 1955, 1974 (2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide

the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do . . . ."  Twombly,

550 U.S. at 555 (citations omitted).  "Factual allegations must be enough to raise a right

to relief above the speculative level."  Id.  "[A] plaintiff must 'nudge [] [his] claims across

the line from conceivable to plausible' in order to survive a motion to dismiss. . . .  Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Twombly, 127 S. Ct. at 1974).

The Tenth Circuit Court of Appeals has held "that plausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012).  The Circuit court has further "noted that '[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context.'"  Id.  The court thus "concluded the *Twombly/Iqbal* standard is 'a wide middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'"  Id.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor.  Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ."  Khalik, 671 F.3d at 1190

8

(quoting Iqbal, 129 S. Ct. at 1949)).  "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable."  Id. at 1191.

Since the plaintiff is not an attorney, his pleading and other papers have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . .  At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant."  Id.

The only claim against the moving party, defendant Karbon Arms (hereinafter "defendant"), is claim four, product liability.  Colorado law would govern this claim.  As defendant correctly asserts, Colorado has expressly adopted the doctrine of strict liability in tort, based on the Restatement (Second) of Torts § 402A.  Wollam v. Woright Medical Group, Inc., 2012 WL 4510695, at *2 (D. Colo. Sept. 30, 2012) (citing Union Supply Co. v. Pust, 583 P.2d 276, 280 (Colo. 1980); Hiigel v. General Motors Corp., 544 P.2d 983 (Colo. 1975)).  "Applying strict liability to product manufacturing, Colorado recognizes 'three general areas of the manufacturing process that lead to strict liability claims . . .:  (1) Physical flaws due to improper manufacture; (2) inadequacies in Design;

9

and (3) inadequate Warnings concerning the hazards or proper methods for safe use."

Id. (quoting Union Supply Co., 583 P.2d at 280 n.1).  "To succeed on a strict liability

claim for a design defect, Plaintiff[] must prove the following elements: (1) the product is

in a defective condition unreasonably dangerous to the user or consumer; (2) the

product is expected to and does reach the consumer without substantial change in the

condition in which it is sold; (3) the design defect caused the plaintiff's injury; (4) the

defendant sold the product and is engaged in the business of selling products; and (5)

the plaintiff sustained damages."  Id. at *2 n.2 (quoting Barton v. Adams Rental, Inc.,

938 P.2d 532, 536-37 (Colo. 1997)).  "Similarly, to succeed on a strict liability claim

premised on a manufacturing defect, Plaintiff[] must prove: the defendant manufactured

the product, engaged in the business of selling the product, and sold the product; the

product was defective and, because of the defect, was unreasonably dangerous to a

person who might reasonably be expected to use it; the product was defective at the

time the manufacturer sold it; the product was expected to, and did, reach the user

without substantial change; plaintiff was a person reasonably expected to use the

product, was injured, and the product's defect caused plaintiff's injuries."  Id. (citing

Price v. Wilson Sporting Goods Co., 2005 WL 1677512, at *3 (D. Colo. July 18, 2005)).

"Strict liability, however, is not the equivalent of absolute liability, and the fact that an

accident may occur in connection with the use of a product does not necessarily mean

that the manufacturer is liable."  Bartholic v. Scripto-Tokai Corp., 140 F. Supp.2d 1098,

1106 (quoting McHargue v. Stokes Div. of Pennwalt, 686 F. Supp. 1428, 1434 (D. Col.

1988)).

        In addition, Colorado recognizes a product liability claim on the basis of

10

negligence.  See Bailey v. Montgomery Ward & Co., 635 P.2d 899 (Colo. App. 1981).

"The principles of general product liability law impose a duty on the manufacturer of a

product to act reasonably in the design, manufacture, and sale of the product."

Arkansas-Platte & Gulf Partnership v. Dow Chemical Co., 886 F. Supp. 762, 767 (D.

Colo. 1995).

"Regardless of whether a product liability action is grounded in negligence or

strict liability, a plaintiff must prove that the produce was defective."  Mile Hi Concrete,

Inc. v. Matz, 842 P.2d 198, 205 (Colo. 1992).  "Colorado law defines a defect as not

simply a mechanical or functional defect but 'one which makes the product

unreasonably dangerous.'" Schneider v. Caterpillar, Inc., 301 Fed.Appx. 755, 758 (10th

Cir. Dec. 3, 2008) (quoting Wayda v. Comet Int'l Corp., 738 P.2d 391, 393 (Colo. App.

1987), overruled on other grounds by Anderson v. M.W. Kellogg Co., 766 P.2d 637, 643

(Colo. 1988) (en banc)).

Here, even construing the Amended Prisoner Complaint liberally in view of the

plaintiff's status as a pro se litigant, the pleading fails to state a claim of product liability.

There is nothing on its face that suggests whether plaintiff is pleading a negligence

theory and/or a strict product liability claim.  In any event, plaintiff has averred no facts

to explain how defendant's product was allegedly defective.  He simply makes

conclusory statements, averring only that "[t]he Respondents have suggested in

response to the grievances that the Hospital equipment is somehow responsible.  Not

being the only inmate having had the same and or similar incident while at the Sterling

Regional Medical Center this is not an unknown fault of the equipment if it is in fact true.

This being a possibility the manufactures [sic] and the Defendants are liable for

11

continuing use of what is known to be faulty equipment." (Docket No. 19 at 6-7).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a case of action will not do,' . . . [n]or does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). The court need not accept conclusory allegations without supporting factual averments. Southern Disposal, Inc. v. Texas Waste, 161 F.3d 1259, 1262 (10th Cir. 1998). Indeed, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (citation omitted). In this case, plaintiff's product liability claim does not contain sufficient factual matter to state a claim to relief that is plausible on its face. Therefore, it is recommended that that claim be dismissed.

Defendant seeks dismissal of this claim against it with prejudice, claiming that the facts alleged by plaintiff and stated bases for the claim demonstrate that an opportunity to amend would be futile, noting that plaintiff has not alleged a single concrete fact to support this claim, nor has he even hinted at any additional facts that he could possibly allege. (Citing Oxendine v. Kaplan, 241 F.3d 1272, 1275 (10th Cir. 2001); Garcia v.

12

<u>Webster</u>, 2011 U.S. Dist. LEXIS 3010, at *4-5 (D. Colo. Jan. 11 2011)).  Moreover, defendant asserts, a plaintiff may not file a lawsuit without supporting facts and then request discovery to search for support for his claims.  Given that this case is still in the early stages of litigation and that this court is not recommending a complete dismissal of his case at this point, this court cannot find that it would necessarily be futile for the plaintiff to move to amend his pleadings if he were to obtain support for his claim during discovery.  Therefore, it is recommended that the dismissal of the plaintiff's product liability claim be without prejudice.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the plaintiff's Motion for Preliminary Injunction and TRO (Docket No. 100), in which the plaintiff seeks a court order directing "the unimpeded continued access to the courts" by being allowed to make additional photocopies, be **DENIED AS MOOT**.  It is further

**RECOMMENDED** that the plaintiff's Motion for Preliminary Injunction and TRO (Docket No. 101), in which the plaintiff seeks a court order directing unimpeded access to inmates Louis Madrid and Edward Gomez for the purpose of obtaining their declarations, be **DENIED**.  It is further

**RECOMMENDED** that Defendant Karbon Arms's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) be **GRANTED** and, therefore, that Claim Four be dismissed without prejudice and that defendant Karbon Arms be removed as a defendant in this action.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2),**

13

**the parties have fourteen (14) days after service of this recommendation to serve**

**and file specific written objections to the above recommendation with the District**

**Judge assigned to the case.  A party may respond to another party's objections**

**within fourteen (14) days after being served with a copy.  The District Judge need**

**not consider frivolous, conclusive, or general objections.  A party's failure to file**

**and serve such written, specific objections waives *de novo* review of the**

**recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53**

**(1985), and also waives appellate review of both factual and legal questions.**

**Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley**

**v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**


Date:  January 24, 2013                    s/ Michael J. Watanabe
       Denver, Colorado                    Michael J. Watanabe
                                           United States Magistrate Judge