IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-03324-WJM-MJW

SHAWN MANDEL WINKLER,

Plaintiff(s),

v.

THOMAS MERTENS, Correctional Officer,
JOHN DOE 2, Unknown Officer of Sterling Correctional facility on Hospital Duty,
WESLY WILSON, Case Manager Supervisor,
ROBERT DICK, Case Manager,
SGT. BRADSHAW, Housing Officer, and
CORRECTIONAL OFFICER LOIZER,
all individually and in their official capacities,

Defendant(s).

---

**RECOMMENDATION ON
CDOC DEFENDANTS' MOTION TO DISMISS (Docket No. 155)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case was initially referred to this court pursuant to an Order Referring Case issued by now Chief Judge Marcia S. Krieger on March 26, 2012. (Docket No. 35). Following Judge Krieger's recusal (Docket No. 63), the case was subsequently reassigned to Judge William J. Martinez (Docket No. 64) and then to Judge Raymond P. Moore upon his appointment (Docket No. 163). On May 30, 2013, Judge Moore issued an Amended Order Referring Case (Docket No. 167).

**PLAINTIFF'S ALLEGATIONS**

When the pro se plaintiff commenced this action, he was in the custody of the Colorado Department of Corrections ("CDOC"). He has since been released.

He alleges the following in his Amended Prisoner Complaint (Docket No. 19).[1]

**Claim One. Use of Excessive Force and Cruel and Unusual Punishment.**

On August 12, 2011, plaintiff was transported to the Sterling Regional Medical Center, unconscious from an accidental poisoning by an unspecified drug, which was the third time such an incident happened to him while at Sterling Correctional Facility. All of these incidents coincided with his filing court actions. On this occasion, he went into "V-Tach and flat lined." (Docket No. 19 at 4). He was resuscitated twice with a defibrillator. He regained semi-consciousness on August 14, 2011, to a sharp pain in his right leg, which was convulsing uncontrollably. His first conscious memory was John Doe 1 (Thomas Mertens)[2] and/or John Doe 2 and/or the court's information officer (Gilmore and/or Bennett) saying, "He's alive. Look at that leg jump." (Docket No. 19 at 4-5). Plaintiff had slowly become aware of an unidentifiable noise which ceased, as did his leg convulsion, while one of these individuals chuckled. Plaintiff was unable to identify the source because he could not focus fully and could not turn because he was intubated. Plaintiff said, "Hey I can hear you." (Docket No. 19 at 5). All banter ended, and one of these individuals said, "Shit! He's awake." (Docket No. 19 at 5). Plaintiff was able to shower two days later, at which time he discovered that the security device

---

[1] Pursuant to an Order Adopting January 24, 2013 Recommendation of Magistrate Judge, issued by Judge Martinez on February 19, 2013 (Docket No. 157), plaintiff's fourth claim for relief, which was a product liability claim against defendant Karbon Arms (the manufacturer of the security device allegedly used against the plaintiff), was dismissed. Therefore, Claim Four will not be discussed in this report and recommendation.

[2] In a Minute Order entered on January 24, 2013 (Docket No. 145), defendant John Doe 1 was replaced by Correctional Officer Thomas Mertens.

(Band-It Taser) had severely burned his right calf.  It is his understanding and belief from further investigation that it is a common practice of correctional officers on hospital watch to "Brand their Cattle."  (Docket No. 19 at 5).

**Claim Two.  Failure to Act to Remedy a Wrong and Intimidation.**  Plaintiff's requests to initiate a formal grievance were denied until he returned to Sterling Correctional Facility.  A Step 1 Grievance and formal complaint of the incident was finally issued by plaintiff's case manager, defendant Robert Dick, on September 16, 2011.  On September 21, 2011, defendant Wesly Wilson summoned plaintiff to his office.  With plaintiff's grievance in hand, he said to plaintiff, "This will not go anywhere because we will just claim equipment malfunction."  (Docket No. 19 at 5).  Plaintiff pointed out he had learned that that safety device was to be changed every 24 hours.  The severity of the burns indicated more than a single discharge or that several pieces of equipment had malfunctioned.  Wilson then threatened plaintiff "to; 'be careful before something more serious might happen,' intimidating more brutality by SCF officers and employees."  (Docket No. 19 at 5).

**Claim Three.  Harassment and Retailiatory Treatment.**  When plaintiff first filed to be added to the Montez class action in 2002, a pattern of events demonstrating intentional retaliation against him was set in motion, i.e., given crushed medication causing "accidental poisoning."  On or about February 18, 2011, plaintiff wrote letters to both Tom Clements and then warden Kevin Milyard about plaintiff's problems and court actions, but he did not receive a response.

On September 29, 2011, defendants Sgt. Bradshaw and Officer Loizer performed

"Blue Tornado" in plaintiff's cell area during which plaintiff's legal documents, notes, and evidence of this and other actions were taken. Plaintiff's case manager, defendant Robert Dick, informed plaintiff the following day that he had ordered the action and had generated documentation that would show that plaintiff was in violation of facility rules, which would allow employees to take all legal papers.

Plaintiff seeks compensatory damages of no less than $783,000.00 for the pain and mental anguish he suffered due to the defendants' deliberate indifference and intentional misconduct, plus fees and costs.

## **CDOC DEFENDANTS' MOTION TO DISMISS**

Now before the court for a report and recommendation is the CDOC Defendants' Motion to Dismiss (Docket No. 155), which was filed by defendants Wilson, Dick, Bradshaw, and Lozier (plaintiff spells this defendant's name as "Loizer").[3] Plaintiff filed a Response to this motion. (Docket No. 158). The court has carefully considered these motions papers and has also considered applicable Federal Rules of Civil Procedure and case law. In addition, the court has taken judicial notice of the court file. The court now being fully informed, makes the following findings, conclusions of law, and recommendation.

The moving defendants seek dismissal of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on the following grounds: (1) to the extent the CDOC defendants are being sued in their official capacities for monetary damages,

---

[3]The moving defendants note in their motion that at the time the motion to dismiss was filed, service on then newly-added defendant Thomas Mertens had just recently been waived, and his response to the Amended Complaint was not yet due. (See Docket No. 155 at 1 n.1).

such claims are barred by the Eleventh Amendment; (2) to the extent plaintiff asserts a claim because he was threatened by defendant Wilson, his claim fails to state a claim upon which relief can be granted; (3) to the extent plaintiff asserts a First Amendment retaliation claim, his claim fails to state a claim upon which relief can be granted; and (4) defendants are entitled to qualified immunity.

> Rule 12(b)(1):
>
> empowers a court to dismiss a Complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. See U.S. CONST. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994). Statutes conferring jurisdiction on federal courts are to be strictly construed. See *F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. See *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).
>
> Motions to dismiss pursuant to Rule 12(b)(1) may take two forms. First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true. See *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact. See *id.* at 1003. A court's consideration of evidence outside the pleadings will not convert the the motion to dismiss to a motion for summary judgment under Rule 56. See *id.*

<u>Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp.</u>, 176 F. Supp.2d 1091, 1094-95 (D. Colo. 2001).

A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts

6

to state a claim to relief that is plausible on its face.'" Cutter v. RailAmerica, Inc., 2008 WL 163016, at *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Twombly, 550 U.S. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Twombly, 127 S. Ct. at 1974).

The Tenth Circuit Court of Appeals has held "that plausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012). The Circuit court has further "noted that '[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context.'" Id. The court thus "concluded the *Twombly/Iqbal* standard is 'a wide middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the

elements of a cause of action, which the Court stated will not do.'" Id.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ." Khalik, 671 F.3d at 1190 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. at 1949 (2009)). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." Id. at 1191.

Since the plaintiff is not an attorney, his pleading and other papers have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

**Official Capacity Claims.** Defendants first correctly assert that any claims brought against them in their official capacities for monetary damages should be

dismissed. "A suit against an individual officer of a government agency in his or her official capacity is really 'only another way of pleading an action against an entity of which an officer is an agent.'" Kennedy v. Finley, 2011 WL 3236174, at *3 (D. Colo. July 28, 2011) (quoting Kentucky v. Graham, 473 U.S. 159, 165 (1985)). "[A] plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." Id. (quoting Kentucky v. Graham, 473 U.S. at 165)). Here, plaintiff seeks only monetary damages. Therefore, the official capacity claims against the defendants should be dismissed.

**Claim Two: Alleged Threat by Defendant Wilson.** Defendants next assert that to the extent the plaintiff asserts a claim because he was threatened by defendant Wilson, his claim fails to state a claim upon which relief may be granted. In Claim Two, plaintiff asserts that defendant Wilson summoned plaintiff to his office, and with plaintiff's grievance in hand, he said to plaintiff, "This will not go anywhere because we will just claim equipment malfunction." (Docket No. 19 at 5). After plaintiff responded, Wilson then threatened plaintiff to "be careful before something more serious might happen." (Docket No. 19 at 5). Such a mere verbal threat, however, without more, does not state a claim of constitutional dimension. See McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) ("[A]cts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment."); Northington v. Jackson, 973 F.2d 1518, 1524 (10th Cir. 1992) (noting that among the actions "necessarily excluded from the cruel and unusual punishment inquiry" are "verbal threats and harassment"); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) ("Verbal harassment or abuse of the sort alleged in this case [i.e., sheriff

threatened to hang prisoner following prisoner's request to mail some legal correspondence] is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983."); Williams v. Martinez, 2010 WL 330313, at *1 (D. Colo. Jan. 20, 2010) ("No matter how inappropriate, verbal harassment and threats without more do not state an arguable constitutional claim."); Teague v. Hood, 2008 WL 2228905, at *13 (D. Colo. May 27, 2008) ("verbal harassment, threats, or taunts do not rise to the level of . . . an Eighth Amendment violation") (and cases cited therein).  Here, plaintiff does not allege that Wilson harmed him, used excessive force against him, or actually prevented plaintiff's access to the prison grievance system or to the court.  It is thus recommended that Claim Two against Wilson be dismissed for failure to state a claim upon which relief can be granted.

**Claim Three.  Harassment and Retaliation.**  It is well-settled that "'[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his' constitutional rights."  Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998). Plaintiff may make a showing of retaliation by demonstrating the following: 1) he engaged in constitutionally protected activity; 2) defendants' actions caused plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity;" and 3) defendants' "adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct."  Shero v. City of Grove, Okla., 510 F.3d 1196, 1203 (10th Cir. 2007) (citing Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000)).  The third element requires that the plaintiff show that defendants' retaliatory motive was a "but for" cause of the defendants' actions.  Smith v. Maschner, 899 F.2d 940, 949-50 (10th Cir. 1990).

10

"An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of [his] constitutional rights." Peterson, 149 F.3d at 1144 (quotation omitted) (emphasis in original). Factual allegations consisting only of engagement in protected activity, for example filing prison grievances, "[do] not establish the requisite causal connection for [a] retaliation claim. If it did, litigious prisoners could claim retaliation over every perceived slight and resist summery judgment simply by pointing to their litigiousness." Strope v. Cummings, 381 Fed. App'x 878, 883 (10th Cir. 2010) (unpublished). Furthermore, temporal proximity between protected activity and a challenged prison action does not, in itself, demonstrate the causal nexus for a retaliation claim. See Friedman v. Kennard, 248 Fed. App'x 918, 922 (10th Cir. 2007) (citing cases).

Here, plaintiff merely states the following as his third claim for relief:

3. Claim Three: **HARASSMENTAND** [sic] **RETALIATORY TREATMENT**

Supporting Facts: A pattern of events demonstrating intentional retaliation against the Plaintiff was set in motion when the Plaintiff first filed to be added to the Montez Class Action in 2002. Given monitored, crushed medication, confirmed by security to have been taken properly, the first 'accidental poisoning' occurred. Transfer to other facilities since then it has only been after the Plaintiff's return to the Sterling Correctional Facility, May 2010, similar accidental and deadly incidents continue. Both Tom Clements, and then Warden Kevin Milyard were contacted by letter on or about February 18 2011 as to the Plaintiff's problems and court actions. No response was offered. September 29, 2011 Sgt. Bradshaw and officer Loizer performed 'Blue Tornado' in the Plaintiff's cell area. The Officers used this opportunity to relieve the Plaintiff of legal documents, notes, and evidence of this and other actions at issue. The Plaintiff's Case Manager Robert Dick on September 30, 2011 @ about 11:00 informed the Plaintiff he had ordered the action and that he had generated documentation that would show the Plaintiff was in violation of facility rules. This would allow employees to take all legal papers.

11

(Docket No. 19 at 6).

Defendants Dick, Bradshaw, and Lozier assert that plaintiff cannot establish that "but for" his participation in the *Montez* case, the search of plaintiff's cell that is at issue would not have taken place. They contend that the constitutional activity at issue - which occurred in 2002 - is simply too far removed to be related to the cell search. Finally, they contend that the remainder of the plaintiff's allegations, including those concerning "accidental poisonings" are vague and do not appear to involve any of the defendants named in this lawsuit.

In response, plaintiff asserts:

> The CDOC defendants begin to confuse the issues in claim that, "Winkler cannot establish that but for his participation in the Montez case, the cell search would not have taken place." The allegations are clear that defendants Dick, Bradshaw and Lozier were acting in a manner to intimidate the plaintiff's efforts to access to the courts. The plaintiff's reference to the Montez case are simply facts showing the pattern of abuse suffered while housed at the Sterling correctional [sic] Facility. In 2002 when the plaintiff became a class member in the Montez action, an accidental over dose of monitored medication occurred requiring hospitalization. In 2011 when the plaintiff filed Logan County case 11-cv-30, again an accidental over dose of monitored medication occurred requiring hospitalization. Also in 2011, just before the incident this complaint covers, when the plaintiff filed Logan County case 11-cv-105 the "accidental poisoning" by monitored medication happened for the third time, setting up the circumstance that allowed the plaintiff to be branded by the Karbon Bandit. Once is a coincidence. The fact hospital records coincide with each separate filing show a pattern of abuse by officials that cannot be denied.

(Docket No. 158 at 7).

In this case, plaintiff's allegations do not establish the requisite causal connection for a retaliation claim against defendants Dick, Bradshaw, and Lozier based on the one cell search. Like the plaintiff in Strope, plaintiff's "attribution of retaliatory motive is

conjectural and conclusory." Strope, 381 Fed. App'x at 883. Plaintiff has not shown that "but for" the alleged desire of Dick, Bradshaw, and/or Lozier to retaliate against him, his cell would not have been searched on that one occasion. With regard to plaintiff's mention in Claim Three of "accidental and deadly incidents," defendants correctly assert that such allegations are vague and do not indicate any personal involvement by any of the named defendants.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a case of action will not do,' . . . [n]or does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). The court need not accept conclusory allegations without supporting factual averments. Southern Disposal, Inc. v. Texas Waste, 161 F.3d 1259, 1262 (10th Cir. 1998). Indeed, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (citation omitted). In this case, plaintiff's retaliation/harassment claim (Claim Three) does not contain sufficient factual matter to state a claim to relief that is plausible on its face. Therefore, it is recommended that Claim Three be dismissed.

13

Based upon the findings above, and in the interest of judicial economy, the court will not address the other bases for dismissal raised in defendants' motion.

In sum, it is recommended that plaintiff's official capacity claims and Claims Two and Three be dismissed and that the Clerk of Court be directed to remove defendants Wilson, Dick, Bradshaw, and Lozier as defendants in this action. Only Claim One, as against defendants Thomas Mertens and John Doe 2, would remain.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the CDOC Defendants' Motion to Dismiss (Docket No. 155) be **granted**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

| | |
|---|---|
| Date: July 3, 2013<br>Denver, Colorado | s/ Michael J. Watanabe<br>Michael J. Watanabe<br>United States Magistrate Judge |